UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DWIGHT D. GOMEZ,

                    Plaintiff,          15-CV-06442T

          -v-                           DECISION AND
                                           ORDER

CAROLYN W. COLVIN, ACTING
Commissioner OF Social Security,

                    Defendant.
_____


        Plaintiff Dwight D. Gomez ("plaintiff") brings this action
under Title II of the Social Security Act ("the Act"), claiming
that the Commissioner of Social Security ("Commissioner" or
"defendant") improperly denied his applications for supplemental
security income ("SSI") and disability insurance benefits ("DIB").

        Currently before the Court are the parties' competing motions
for judgment on the pleadings pursuant to Rule 12(c) of the Federal
Rules of Civil Procedure.   For the reasons set forth below,
plaintiff's motion is denied and, defendant's motion is granted.

## PROCEDURAL HISTORY

        On February 6, 2012, plaintiff filed applications for DIB and
SSI alleging disability as of August 19, 2010 due to a herniated
disc and hepatitis C. Administrative Transcript ("T.") 58, 67,
76-77, 151-64, 210.   Following a denial of that application on
April 26, 2012, plaintiff and vocation expert ("VE") Julie Andrews
testified at a hearing, held at plaintiff's request, on December

19, 2013 before administrative law judge (the "ALJ") Michael W. Devlin.   T. 27-57.   The ALJ issued an unfavorable decision on March 14, 2014. T. 15-26.

Considering the case *de novo* and applying the five-step analysis contained in the Social Security Administration's regulations (*see* 20 C.F.R. §§ 404.1520(a), 416.920(a)), the ALJ made the following findings: (1) plaintiff met the insured status requirements of the Act through December 31, 2014; (2) he had not engaged in substantial gainful activity since August 19, 2010, the date of the onset of his alleged disability; (3) his chronic right-side low back pain secondary to herniated L5-Sl disc with intermittent leg pain secondary to lumbar radiculopathy and chronic cervical spine pain/arthritis were severe impairments; (4) his impairments, singly or combined, did not meet or medically equal the severity of any impairments listed in 20 CFR Part 404, Subpart P, Appendix 1; and (5) plaintiff had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567 (a) and 416.967(a) with the following limitations: occasionally lift and/or carry 10 pounds; frequently lift and/or carry less than 10 pounds; stand and/or walk at least two hours in an eight hour workday; sit about six hours in an eight-hour workday; occasionally push and/or pull 10 pounds; occasionally climb ramps and/or stairs, balance, stoop, kneel, crouch, and crawl; never climb ladders,

ropes, or scaffolds; and occasionally reach, handle and finger bilaterally. T. 16-17.

The Appeals Council declined jurisdiction to review the ALJ's decision on May 28, 2015, and this action ensued.

**DISCUSSION**

I.   **General Legal Principles**

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Section 405(g) provides that the District Court "shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2007).  The section directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record.

When determining whether the Commissioner's findings are supported by substantial evidence, the Court's task is "'to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.'" *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999), *quoting Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam).  Section 405(g) limits the scope of the Court's review to two inquiries: whether the Commissioner's findings were supported by substantial evidence in

the record as a whole and whether the Commissioner's conclusions are based upon an erroneous legal standard. *See Green-Younger v. Barnhart*, 335 F.3d 99, 105-106 (2d Cir. 2003).

Plaintiff, 61 years old, testified that he had four adult children and currently lived alone. He graduated high school and obtained an associates degree at Monroe Community College. He subsequently attended SUNY Brockport and graduated with a B.S. in social work. In 1999, plaintiff was employed as a counselor by Catholic Family Services for homeless shelter residents who were "dealing with substance abuse issues and some mental health issues." T. 34. After doing that for several years, plaintiff worked as a residential counselor with veterans and as a case manager at East House, among other positions over the years, treating people with mental health and substance abuse issues. In July 2010, plaintiff was in a motor vehicle accident during which he sustained injuries to his neck, back, and leg. He was diagnosed with a herniated disc and strained neck nerves and tendons and experienced throbbing, stabbing pain and the inability to sit, stand, or walk for some periods. He also experienced numbness and tingling in his legs on a daily basis.

Plaintiff's symptoms, which include frequent, intense headaches and stabbing pain, have not improved since the accident. He began taking prescription oxycodone, gabapentin, and hydrocodone to treat his pain, which helped, but also caused him to feel dizzy

and become forgetful.  Plaintiff also had right side liver pain as a result of developing the disease hepatitis C from an infection during his military service.  Plaintiff testified that, in 2012, he certified on a weekly basis that he ready, willing, and able to work as part of his application for unemployment benefits.

The ALJ also heard testimony from the VE. T. 48-56.  The ALJ posed a hypothetical question requesting an opinion concerning an individual of plaintiff's age, education, and experience who could perform sedentary work limited to occasionally lift and/or carry 10 pounds;

frequently lift and/or carry less than 10 pounds; stand and/or walk at least two hours in an eight-hour day; sit about six hours in an eight-hour day; occasionally push and/or pull 10 pounds; occasionally climb ramps and/or stairs, balance, stoop, kneel, crouch, and crawl; never climb ladders, ropes, or scaffolds; occasionally reach, handle, and finger bilaterally. T. 49-50.  The VE opined that such a person could perform the jobs of an information clerk, for which there exist 2.2 million positions nationally, and a telephone solicitor, for which there exist 343,275 positions nationally.  The VE further testified that if an individual was unable to sit, stand, and walk in combination for at least eight hours in an eight-hour work day, or was off task 20 percent of the work day, there would be no jobs available on a full-time, competitive basis.

IV.   **The Commissioner's Decision Denying Benefits is Supported by Substantial Evidence.**

   A.   **RFC Assessment and the Treating Physician Rule**

Plaintiff contends that the RFC determination is legally erroneous and unsupported by substantial evidence because the ALJ failed to properly weigh the opinions of his treating physicians, Dr. Ess and Dr. Andolina, to which the ALJ assigned "little weight." Plaintiff's memorandum of law, p. 5-6. Defendant responds that the ALJ properly weighed the treating physician opinions and discussed the reported symptoms, objective findings, and medical opinions contained in the accompanying records.

"It is well-settled that 'the RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).'" *Hogan v. Astrue*, 491 F.Supp.2d 347, 354 (W.D.N.Y. 2007), quoting Social Security Ruling 96-8p, 1996 WL 374184, at *7 (S.S.A. 1996), citing *Balsamo v. Chater*, 142 F.3d 75, 80-81 (2d Cir. 1998). In this case, after setting forth plaintiff's RFC, the ALJ summarized the medical evidence and discussed records obtained from plaintiff's medical providers detailing his treatment history 2010 to 2014 T. 18-20. The ALJ throughly discussed how the medical evidence to which he referred and relied upon supported his

6

conclusion that plaintiff was not disabled and could perform sedentary work with the aforementioned limitations.  T. 18-20.

Contrary to plaintiff's contention, there is no indication that the ALJ failed to properly weigh the treating opinion evidence in determining his RFC.  It is well settled that the medical opinion of plaintiff's treating physician must be given "controlling" weight if that opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); *see also Green-Younger*, 335 F.3d at 106.  Medically-acceptable clinical and laboratory diagnostic techniques include "'a patient's report of complaints, or history, [a]s an essential diagnostic tool.'" *Id.*, 335 F.3d at 107, quoting *Flanery v. Chater*, 112 F.3d 346, 350 (8th Cir. 1997).

As a rule, the Commissioner must "'give good reasons in its notice of determination or decision for the weight it gives [plaintiffs's] treating source's opinion.'" *Clark v. Commissioner of Social Sec.*, 143 F.3d 115, 118 (2d Cir. 1998), quoting 20 C.F.R. §§ 404.15279(d)(2), 416.927(d)(2).  "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific.'" *Blakley v. Commissioner of Social Sec.*, 581 F.3d 399, 406 (6th Cir. 2009), quoting Social Security Ruling 96-2p, 1996 WL 374188, at *5 (S.S.A. 1996).  Because the "good

reasons rule" exists to "ensur[e] that each denied claimant receives fair process" (*Rogers v. Commissioner of Social Sec.*, 486 F.3d 234, 243 [6th Cir. 2007]), an ALJ's "'failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight' given '*denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.*'" *Blakley*, 581 F.3d at 407, quoting *Rogers*, 486 F.3d at 243.

The ALJ noted that Dr. Andolina's opinion that plaintiff was restricted from lifting more than ten pounds and engaging in repetitive bending and stooping was consistent with the doctor's physical examination findings and the record overall. The ALJ, however, found that Dr. Andolina's conclusory statement that plaintiff was totally disabled, which the doctor noted throughout his treatment notes, was not based on a function-by-function assessment or supported by the record and, therefore, warranted little weight.

With respect to the 2014 affidavit supplied by plaintiff's chiropractor, Dr. Ess, in which he opined that the injuries related to plaintiff's automobile accident caused significant limitations in the use of his cervical and lumbar spine, the ALJ afforded this opinion little weight due to Dr. Ess's failure to "provide specific functional limitations of [plaintiff's] ability to perform work-

related activities." T. 20.  The ALJ further notes that plaintiff's allegations of disability are not supported by the record, which reveals: "mild tenderness and normal motor strength" examination findings, mild to moderate pathology in diagnostic findings; plaintiff's reports of "back and leg pain relief from gabapentin and steroid injections," no treatment after April 2012, and no follow-up on his specialist's surgery recommendation. T. 20.

In weighing the medical opinions of the consultative examiners, the ALJ noted that Dr. Harbinder Toor's opinion was "generally consistent with the medical evidence of record showing mostly mild to moderate pathology." T. 20.  The ALJ thus accorded "significant weight" to Dr. Toor's opinion that plaintiff "had moderate limitation for standing, walking, and sitting; moderate-to-severe limitation for bending or lifting; and mild-to-moderate limitation for reaching, pushing, or pulling because of pain in the shoulder." T. 20.  In weighing the opinion of the orthopedic independent examiner, Dr. Mills, the ALJ noted "his specialization in orthopedics and the consistency of his opinion with his examination findings and the overall medical record," and accorded "significant weight" to Dr. Mills's opinion that "plaintiff was able to perform activities of daily living without limitations" and that his "prognosis was good." T. 20.

Plaintiff's treatment records reveal that, in June 2011, plaintiff reported "ongoing and constant right-side low-back pain

with occasional throbbing pain down his right leg" with "no associated leg weakness or paresthesia." T. 258. His pain, which he described as a seven on a scale of one to ten, increased with activity, and plaintiff was "considering a repeat epidural steroid injection." T. 258. The physical examination revealed a positive right straight leg test and "mild lumbar tenderness" with a decreased range of motion, deep tendon reflexes symmetrically decreased in the lower extremity, and normal right leg motor strength. T. 258. Dr. Andolina noted that plaintiff's chronic low back pain secondary to a herniated L5-S1 disc with intermittent leg pain secondary to lumbar radiculogy was mildly relieved by a prior steroid injection, and the doctor recommended a second neurosurgical opinion. Although Dr. Andolina opined that plaintiff was totally disabled, he further opined that plaintiff had not reached maximum medical improvement, noting that he was continuing gabapentin and starting oxycodone/APAP.

Dr. Andolina's January 2012 treatment report reveals that plaintiff continued to have moderately severe low back pain, but that he was no longer having radicular symptoms down his right leg. The physical examination findings were essentially unchanged from 2011. Dr. Andolina, however, made no referrals, and the treatment plan was to continue oxycodone/APAP up to 4 times a day as needed. He opined that plaintiff had not reached maximum medial improvement.

Based on the foregoing, the Court concludes that the ALJ properly weighed the treating opinion evidence and provided good reasons for discounting portions which were unsupported by the doctors' own treatment notes and the record as a whole. The Court finds, therefore, that the ALJ's RFC finding is supported by the medical evidence contained in the record, including reports and opinions from treating providers and consultative examiners, plaintiff's own testimony, and the VE's opinion. This evidence, particularly the opinions, the records, and the observations of his treatment providers, Drs. Andolina and Ess, and consultative examiners, Drs. Toor and Mills, and plaintiff's self-reported complaints, supports the ALJ's determination that plaintiff can perform a range of sedentary work with certain limitations that incorporate the opinion evidence of his doctors.

The Court finds that there is substantial evidence in the record to support the ALJ's decision to accord little weight to Dr. Andolina's opinion that plaintiff was totally disabled and Dr. Ess's opinion that plaintiff's ability to use his cervical and lumbar spine was significantly limited and assess greater weight to the opinions of the consultative examiners. Moreover, it is well settled that the opinions of consultative examiners can constitute substantial evidence to support the RFC finding if they are consistent, as they are here, with the record evidence as a whole. *See Mongeur*, 722 D.2d at 1039.

11

B.   **Plaintiff's credibility**

Plaintiff also contends that the ALJ failed to consider the required factors when assessing his credibility.   Plaintiff's memorandum of law, 7-9.   Defendant responds that the ALJ properly found that plaintiff's reports concerning the intensity, persistence, and limiting effects of his symptoms were not supported by the record.

It is well settled that to establish disability, there must be an underlying physical or mental impairment demonstrated by clinical and laboratory diagnostic techniques that could reasonably be expected to produce the symptoms alleged.   *See* 20 C.F.R. § 416.929(b); *Gallagher v. Schweiker*, 697 F.2d 82, 84 (2d Cir. 1983).   When a such an impairment exists, objective medical evidence, if available, must be considered in determining whether disability exists.   *See* 20 C.F.R. § 416.929 (c)(2).   Where plaintiff's symptoms suggest an even greater restriction of function than can be demonstrated by the medical evidence, the ALJ may consider factors such as his daily activities, the location, duration, frequency and intensity of pain, any aggravating factors, the type, dosage, effectiveness, and adverse side-effects of medication, and any treatment or other measures used for pain relief.   *See* 20 C.F.R. § 416.929(c)(3); Social Security Ruling ("SSR 96-7p"), (July 2, 1996), 1996 WL 374186, at *7.   It is well within the ALJ's discretion to evaluate the credibility of

plaintiff's testimony and assess, in light of the medical findings and other evidence, the true extent of her symptoms. *See Mimms v. Heckler*, 750 F.2d 180, 186 (2d Cir. 1984); *Gernavage v. Shalala*, 882 F.Supp. 1413, 1419 (S.D.N.Y. 1995).

While it is obvious to the Court that plaintiff suffers from "serious pain[,] . . . 'disability requires more than mere inability to work without pain. To be disabling, pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment. Otherwise, eligibility for disability benefits would take on new meaning.'" *House v. Comm'r of Soc. Sec.*, 32 F. Supp. 3d 138, 154 (N.D.N.Y. 2012), quoting *Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2d Cir.1983). In the ALJ's decision, it is clear that he analyzed plaintiff's credibility and considered the factors set forth in SSR 96-7p and 20 C.F.R. §§ 404.1529. In doing so, the ALJ reiterated that the record reveals mild tenderness and normal motor strength examination findings, diagnostic imaging showing mild to moderate pathology, pain relief from gabapentin steroid injections, the failure to follow up on Dr. Fishin's surgery recommendation, and the apparent failure to seek treatment since April 2012. The ALJ also noted plaintiff's reports that he was able to drive, particularly as a cab driver in 2011, shop, and attend church. Plaintiff also claimed unemployment benefits in 2012 in which he certified his readiness, willingness, and ability to work.

13

Based on the foregoing, the Court finds no error in the ALJ's credibility determination and finds that this determination is supported by substantial evidence in the record.

### C.  Consideration of Transferable Skills at Step Five

Finally, plaintiff argues that the ALJ improperly relied on the VE's testimony concerning plaintiff's transferrable skills at Step 5.  Plaintiff's memorandum of law, 10-12.  Defendant responds that the skills acquired in plaintiff's past work, which were identified by the VE during the hearing, were properly considered by the ALJ at Step 5. Defendant's memorandum of law, p. 21.

20 C.F.R. 404.1566(b) provides that an ALJ must show at least one job a claimant can perform in the national and local economy. Here, the VE identified the semi-skilled occupations of information clerk and telephone solicitor and testified that plaintiff had acquired transferable skills from his past skilled sedentary work as a case manager and skilled light work as an attendance officer, including the ability to: coordinate, analyze and compile data; persuade, divert, supervise, instruct, negotiate with, and mentor people; and use logical thinking and specialized training to counsel others in order to define and solve problems.  Contrary to plaintiff's contention, despite his "advanced" age of 57, the Court finds no error concerning the VE's transferable skills testimony, and there is no evidence in the record to suggest that he is unable to learn the semi-skilled positions of an information clerk

14

(specific vocational preparation ("SVP") level 4) or a telephone solicitor (SVP level 3).

Therefore, the ALJ properly relied on the vocational expert's testimony in his determination that plaintiff not disabled.  The Count concludes that the ALJ's decision is based on substantial evidence in the record.

### CONCLUSION

For the foregoing reasons the plaintiff's motion for judgment on the pleadings is denied, and defendant's cross-motion for judgment on the pleadings is granted.  The complaint is dismissed in its entirety with prejudice.  The ALJ's decision denying plaintiff's claims for SSI and DIB is supported by the substantial evidence in the record.

ALL OF THE ABOVE IS SO ORDERED.


    S/ MICHAEL A. TELESCA
HONORABLE MICHAEL A. TELESCA
UNITED STATES DISTRICT JUDGE

DATED:  August 12, 2016
       Rochester, New York

15